RCH/CMM:SKW/AT/EWS/MOM
F. #2024R00298

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

No. 26-CR-177 (KAM)

ANTHONY J. CARONE,
FRANK V. CARONE,
CRYSTAL CHEN, and
YAN PO ZHU,
also known as "Andy Zhu,"

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS


MICHAEL G. CONSIDINE
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Catherine M. Mirabile
Sara K. Winik
Adam R. Toporovsky
Eric Silverberg
Michael McGuinness
Assistant U.S. Attorneys
(Of Counsel)

TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

I. The Indictment ..... 2

II. The Defendants' Motion ..... 6

LEGAL STANDARD ..... 6

ARGUMENT ..... 9

I. The Defendants Are Not Entitled to a Bill of Particulars Regarding the Charged Conspiracy ..... 9

II. The Defendants Are Not Entitled to a Bill of Particulars Regarding Official Acts ..... 16

III. The Defendants Are Not Entitled to a Bill of Particulars Regarding Obstruction of Justice ..... 20

CONCLUSION ..... 22

TABLE OF AUTHORITIES

Page(s)

Cases

Hamling v. United States,
418 U.S. 87 (1974)........................................................................................................ 6

McDonnell v. United States,
579 U.S. 550 (2016)............................................................................................... 16, 18

United States v. Adams,
No. 24 Cr. 556 (DEH), 2025 WL 384558 (S.D.N.Y. Feb. 4, 2025)..............................12-13, 14

United States v. Adams,
760 F. Supp. 3d 6, 17 (S.D.N.Y. 2024) ......................................................................... 17

United States v. Albunio,
No. 91-CR-0403 (ILG), 1992 WL 281037 (E.D.N.Y. Sept. 9, 1992)...................................... 21

United States v. Aliperti,
867 F. Supp. 142 (E.D.N.Y. 1994) ................................................................................ 19

United States v. Barrera,
950 F. Supp. 2d 461 (E.D.N.Y. 2013)............................................................................ 18

United States v. Barret,
824 F. Supp. 2d 419 (E.D.N.Y. 2011) ....................................................... 7, 11-12, 13

United States v. Batista,
No. 06-CR-265 (DLI), 2009 WL 910357 (E.D.N.Y. Mar. 31, 2009) ........................................ 7

United States v. Bazezew,
783 F. Supp. 2d 160 (D.D.C. 2011) ........................................................................ 13, 14

United States v. Bellomo,
263 F. Supp. 2d 561 (E.D.N.Y. 2003)..........................................................................7-8

United States v. Bortnovsky,
820 F.2d 572 (2d Cir. 1987).................................................................................6-7, 15

United States v. Boyland,
862 F.3d 279 (2d Cir. 2017)......................................................................................... 17

United States v. Chen,
378 F.3d 151 (2d Cir. 2004)...............................................................................8, 15-16

United States v. Clase de la Cruz,
818 F. Supp. 3d 472 (E.D.N.Y. 2026) .......... 7, 11, 18

United States v. Cordones,
No. 11-CR-205 (AKH), 2022 WL 815229 (S.D.N.Y. Mar. 17, 2022) .......... 8

United States v. Curcio,
680 F.2d 881 (2d Cir. 1982) .......... 21

United States v. Faltine,
No. 13-cr-315 (KAM), 2014 WL 4370811 (E.D.N.Y. Sept. 2, 2014) .......... 10

United States v. Feola,
651 F. Supp. 1068 (S.D.N.Y. 1987) .......... 18, 21

United States v. Friedman,
854 F.2d 535 (2d Cir. 1988) .......... 13

United States v. Ianniello,
621 F. Supp. 1455 (S.D.N.Y. 1985) .......... 8

United States v. Issa,
No. 17 Cr. 74 (CM), 2018 WL 461131 (S.D.N.Y. Jan. 9, 2018) .......... 19

United States v. Leonelli,
428 F. Supp. 880 (S.D.N.Y. 1977) .......... 7

United States v. Lino,
No. 00 CR. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Dec. 29, 2000) .......... 19

United States v. Mandell,
710 F. Supp. 2d 368 (S.D.N.Y. 2010) .......... 20

United States v. Maneti,
781 F. Supp. 169 (W.D.N.Y. 1991) .......... 9

United States v. Marcus,
628 F.3d 26 (2d Cir. 2010) .......... 7

United States v. Matos-Perala,
691 F. Supp. 780 (S.D.N.Y. 1988) .......... 13

United States v. Mitlof,
165 F. Supp. 2d 558 (S.D.N.Y. 2001) .......... 7, 8, 12, 13, 19

United States v. Murgio,
209 F. Supp. 3d 698 (S.D.N.Y. 2016) .......... 19

United States v. Muyet,
945 F. Supp. 586 (S.D.N.Y. 1996) ........ 8

United States v. Ng Lap Seng,
934 F.3d 110 (2d Cir. 2019) ........ 16-17

United States v. Ng,
No. 15 Cr. 706 (VSB), Dkt. 452 at 11 (S.D.N.Y. Apr. 26, 2017) ........ 19-20

United States v. Persing,
No. 06 CR 815 (BMC), 2008 WL 11344620 (E.D.N.Y. May 6, 2008) ........ 8, 11

United States v. Ramirez,
602 F. Supp. 783 (S.D.N.Y. 1985) ........ 19

United States v. Raniere,
384 F. Supp. 3d 282 (E.D.N.Y. 2019) ........ 7

United States v. Reed,
773 F.2d 477 (2d Cir. 1985) ........ 17

United States v. Rose,
No. 19 CR. 789 (PGG), 2021 WL 2117119 (S.D.N.Y. May 24, 2021) ........ 15

United States v. Savin,
No. 00 CR. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ........ 18

United States v. Schwimmer,
649 F. Supp. 544 (E.D.N.Y. 1986) ........ 8, 17, 18, 21

United States v. Shteyman,
No. 10-cr-00347 (SJ), 2011 WL 2006291 (E.D.N.Y. May 23, 2011) ........ 10

United States v. Siddiqi,
No. 06 CR 377 (SWK), 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007) ........ 14-15

United States v. Skelos,
No. 15-CR-317, 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ........ 14

United States v. Snyder,
603 U.S. 1 (2024) ........ 12

United States v. Starks,
No. 1:24-cr-00126 (JLR), 2024 WL 4528169 (S.D.N.Y. Oct. 18, 2024) ........ 10, 12

United States v. Torres,
901 F.2d 205 (2d Cir. 1990) ........ 7, 8, 11

United States v. Urso,
369 F. Supp. 2d 254 (E.D.N.Y. 2005) .......... 13

United States v. Walker,
992 F. Supp. 732 (N.D.N.Y. 1996) .......... 18

United States v. Walsh,
194 F.3d 37 (2d Cir. 1999) .......... 7

United States v. Wedd,
No. 15 Cr. 616 (KBF), 2016 WL 1055737 (S.D.N.Y. Mar. 10, 2016) .......... 18

United States v. Wey,
No. 15-cr-611 (AJN), 2017 WL 237651 .......... 18

United States v. Wilson,
493 F. Supp. 2d 364 (E.D.N.Y. 2006) .......... 13, 17-18

United States v. Wilson,
565 F. Supp. 1416 (S.D.N.Y. 1983) .......... 17

United States v. Yannotti,
541 F.3d 112 (2d Cir. 2008) .......... 6

Federal Statutes

18 U.S.C. § 201(a)(3) .......... 16, 17

18 U.S.C. § 371 .......... 2

18 U.S.C. § 666(a)(1)(B) .......... 2, 12, 16, 17

18 U.S.C. § 1343 .......... 2

18 U.S.C. § 1346 .......... 2

18 U.S.C. § 1349 .......... 2

18 U.S.C. § 1512(c)(2) .......... 2

18 U.S.C. § 1952(a)(3)(A) .......... 2

18 U.S.C. § 1956(h) .......... 2

18 U.S.C. § 7206(1) .......... 2

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendants' motion for a bill of particulars, filed on August 25, 2026. See ECF No. 104-1 (the "Motion"). All four defendants seek particulars regarding (1) the exact date, time, and location of the corrupt agreement entered between defendants Frank Carone ("F. Carone") and Yan Po Zhu ("Zhu") and (2) the official acts or acts that F. Carone performed, or caused to be performed, as part of the defendants' corrupt agreement. F. Carone and Anthony Carone ("A. Carone") also seek particulars as to whether the allegations in paragraph 47 of the Indictment describe all the conduct that the government will offer as proof of obstruction of justice, as charged in Count Ten.

The defendants are not entitled to a bill of particulars. First, numerous courts have held that a bill of particulars may not be used as a vehicle to force the government to specify the exact date, time, and location of when a conspiracy was formed, including when and where specific individuals decided to enter that criminal conspiracy. Second, the defendants are not entitled to a bill of particulars regarding any official acts performed by F. Carone. Although the Indictment identifies official action taken by F. Carone pursuant to the corrupt agreement, the actual performance of an official act is not an element of any of the charged offenses, necessarily undercutting any argument that further specificity is required at this juncture. Third, as to Count Ten, no further particulars are required because the Indictment sufficiently describes F. Carone and A. Carone's scheme to obstruct justice, and, even if that were not the case, additional information provided by the government to defense counsel provides a clear picture of the nature of the charged crime. The Motion should be denied in full.

## BACKGROUND

### I. The Indictment[1]

On June 12, 2026, a grand jury sitting in the Eastern District of New York returned a thirteen-count indictment (the "Indictment") charging: (a) all of the defendants with one count of conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371; (b) F. Carone with one count of federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B); (c) Crystal Chen and Yan Po Zhu with one count of federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B); (d) all four defendants with one count of using interstate facilities to commit bribery in violation of 18 U.S.C. § 1952(a)(3)(A); (e) all four defendants with one count of conspiracy to commit honest services wire fraud in violation of 18 U.S.C. § 1349; (f) all four defendants with three counts of honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346; (g) all four defendants with one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h); (h) F. Carone and A. Carone with one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2); (i) A. Carone with two counts of subscribing to false tax returns in violation of 18 U.S.C. § 7206(1); and (j) F. Carone with one count of subscribing to a false tax return in violation of 18 U.S.C. § 7206(1).

The charges arose from the defendants' scheme to exploit the unprecedented migrant crisis facing New York City. Because the volume of migrant asylum seekers needing housing outpaced New York City's existing shelter system in 2022, the City instituted a process for contracting with local hotels to house migrant asylum seekers. Zhu and Chen sought to secure a multimillion-dollar Emergency Shelter Contract for their hotel, the Microtel, by

[1] Unless otherwise indicated, the anonymized persons described herein are the same as those referenced in the Indictment and are referenced herein using those same identifiers.

agreeing to pay bribes to F. Carone through A. Carone. In exchange, F. Carone, in his capacity as Chief of Staff to the Mayor of New York City, steered the contract to the Microtel by directing the then-New York City Department of Social Services ("DSS") Commissioner to reconsider the Microtel as a migrant shelter site, despite its earlier rejection by professional DSS staff.

The 29-page, 74-paragraph Indictment describes the facts and circumstances of the bribery scheme in significant detail, specifying the dates of certain messages, meetings, telephone calls, emails, and financial transactions. For instance, the Indictment details that:

- On June 3, 2026, Zhu socialized with F. Carone at Zhu's house. Id. ¶ 17. After their visit, Zhu exchanged the following text messages with F. Carone seeking his assistance to secure an Emergency Shelter Contract for the Microtel. Id. ¶ 18.

  ZHU: who I need contact with?

  F. CARONE: About?

  ZHU: regarding approval of my hotel (29-12 40th Avenue (LIC) for the shelter program. Who should I contact to

  F. CARONE: Ok standby

- On June 15, 2022, the day after Zhu and Chen learned from DSS officials that the Microtel had been rejected for an Emergency Shelter Contract, Chen texted Consultant #1, a consultant she and Zhu had retained to apply for an Emergency Shelter Contract on the Microtel's behalf, to say that "the location is a no currently," but that Zhu "is also speaking to someone else in the Mayor's office to see if we have another chance." Id. ¶ 19.

- On August 13, 2022, both A. Carone and F. Carone attended a gathering at Zhu's house. Id. ¶ 22.

- On September 19, 2022, Zhu and F. Carone exchanged the following text messages about obtaining an Emergency Shelter Contract for the Microtel, id. ¶ 23:

  ZHU: Hi Frank, hope all is well! We are interested in the immigrant emergency program. It would be helpful for my hotel if we can get at a one year

program to start right away, and we can have time to work on long term programs. Can you please help me look into it? Thank you so much!

F. CARONE: What is address?

ZHU: 29-12 40 Ave Long Island city 11101

Thank you my big guy

- Just three days later, on September 22, 2022, F. Carone contacted City Official #1, who then contacted City Official #2 approximately one minute later. Id. ¶ 24. Following that phone call, City Official #2 sent an email to DSS staff with the subject line "Address from [City Official #1]." In substance and in part, that email directed DSS staff to "take a look" at the Microtel and provided the address of the hotel. City Official #2 identified Chen as the Microtel's point of contact. Id.

- Two days later, on September 24, 2022, Zhu and F. Carone socialized at Zhu's house. Id. ¶ 25.

- Two days later, on September 26, 2022, Zhu texted F. Carone, "My brother 29-12 40 Ave please help me get done we need to refinance." Id. ¶ 26.

- On September 27, 2022, A. Carone texted Zhu, "I want to talk to you about LIC." Id. ¶ 27. The next day, A. Carone and Zhu met at a social club in Manhattan, and, later that evening, F. Carone met with City Official #1 at the same club. Id. The same day, Chen texted A. Carone to confirm Zhu's understanding that the Microtel "was submitted yesterday." Id.

- On October 4, 2022, City Official #1 texted A. Carone to reiterate that, given the concentration of hotels already awarded Emergency Shelter Contracts in Long Island City and continued community opposition, DSS had been focusing on locating hotels in "places other than LIC" to operate as emergency shelters. Id. ¶ 29.

- On October 11, 2022, City Official #2 sent an email to DSS staff and provided the address for the Microtel and Chen's contact information, stating that the Microtel had "come directly from the top . . . I know it is in LIC, but we should assume it is approved (confirmed with [City Official #1])." Id. ¶ 31.

- On October 14, 2022, an entity controlled by Zhu executed a document purporting to retain Law Firm #2 for assistance in obtaining an Emergency Shelter Contract. The agreement specified a 12-month term, during which Zhu and Chen would make monthly payments of $10,000 to Law Firm #2. That day, Chen and Zhu caused $10,000 to be wired to an account held by Law Firm #2. Id. ¶ 35.

- A week later, Chen texted Individual #1, an individual responsible for wiring funds to Law Firm #2 on Zhu and Chen's behalf, writing in part, "The boss completely trusts the two brothers." When Individual #1 asked, "Isn't it just about giving $120,000[,]" Chen responded in part, "In the end, it's all about money and giving the two brothers a way out." Id. ¶ 36.

- On October 20, 2022, an Emergency Shelter Contract for the Microtel was approved. The Microtel ultimately received $6,825,000 pursuant to Emergency Shelter Contracts. Id. ¶ 33.

- Between October 2022 and September 2023, Zhu and Chen ultimately caused the Microtel to pay $120,000 in bribes to A. Carone and F. Carone via a bank account associated with Law Firm #2. Id. ¶ 37. A. Carone caused the funds to be disbursed to F. Carone (1) by paying F. Carone's personal credit card bills, and (2) transferring funds to a bank account associated with F. Carone. Id. ¶¶ 39, 42. The bribery funds were commingled with legal fees from other clients that F. Carone referred to A. Carone while F. Carone served as Chief of Staff. The Carones used this financial arrangement to conceal the bribery scheme. Id. ¶¶ 38, 42.

- On or about November 20, 2023, Chen emailed A. Carone requesting to terminate their retainer agreement. Despite no services having been provided in October or November 2023, A. Carone asked Chen to "please immediately remit the fees for October and November and then we will consider this matter terminated." Id. ¶ 44. Chen and Zhu did not do so. Id. ¶ 45. The next day, F. Carone texted Zhu, "I need to see you." Id.

- On December 25, 2023, F. Carone and Zhu exchanged a series of text messages. F. Carone told Zhu that he was "not happy about something" and would "not discuss[] [any future deals] until past is worked out." In response, Zhu stated that he had "asked my partners to pay you for a year." Id. ¶ 46.

The Indictment also describes F. Carone and A. Carone's scheme to obstruct justice, which centers on the creation and provision of a backdated promissory note to the government. See Ind. ¶ 47. Specifically, the Indictment alleges that by spring 2024, F. Carone and A. Carone had become aware of a federal grand jury investigation. To conceal the illegal nature of the bribery scheme and otherwise obstruct the investigation, F. Carone and A. Carone fabricated evidence to create the impression that the payments from A Carone's law firm account to F. Carone's personal credit card account and to F. Carone's law firm were personal loan payments made by A. Carone. In approximately July 2024, F. Carone and A. Carone created and

executed a document purporting to be a promissory note, which they backdated to January 2022 and subsequently provided to federal investigators on October 26, 2025. Id. ¶ 47.

II. The Defendants' Motion

On August 25, 2026, the defendants moved for a bill of particulars, claiming they cannot adequately prepare for trial because the Indictment does not sufficiently describe when or how they formed a corrupt agreement, the official acts performed by F. Carone, or F. Carone and A. Carone's obstructive conduct.

## LEGAL STANDARD

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). The Second Circuit has made clear that an indictment satisfies the requirements of Rule 7(c) if it "do[es] little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (citation omitted).

"Rule 7(f) of the Federal Rules of Criminal Procedures permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge[s] pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). The purpose of a bill of particulars is "to provide defendant with information about the details of the charge

against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial." <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990) (quoting 1 C. Wright, Fed. Practice and Proc. § 129, at 434-35 (2d ed. 1982) (quotation marks omitted), <u>abrogated on other grounds by</u> <u>United States v. Marcus</u>, 628 F.3d 26, 41 (2d Cir. 2010). Accordingly, "[a] bill of particulars is only required 'where the charges of the indictment are so general that that they do not advise the defendant of the specific acts of which he is accused.'" <u>United States v. Clase de la Cruz</u>, 818 F. Supp. 3d 472, 480 (E.D.N.Y. 2026) (Matsumoto, J.) (quoting <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999)) (internal quotations and citations omitted). "The information sought [in a bill of particulars] 'must be necessary, not just merely helpful.'" <u>Id.</u> (citing <u>United States v. Raniere</u>, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019)).

To be sure, a bill of particulars may be helpful to a defendant in any case. But "the law does not impose upon the Government an obligation to preview its case or expose its legal theories," <u>United States v. Leonelli</u>, 428 F. Supp. 880, 882 (S.D.N.Y. 1977), and therefore "[t]he ultimate test must be whether the information sought is necessary, not whether it is helpful," <u>United States v. Mitlof</u>, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001); <u>see also</u> <u>United States v. Barret</u>, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) (Matsumoto, J.) ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories." <u>United States v. Batista</u>, No. 06-CR-265 (DLI), 2009 WL 910357, at *9 (E.D.N.Y. Mar. 31, 2009) (internal quotations omitted)); <u>United States v. Bellomo</u>, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way

in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."); United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."); United States v. Schwimmer, 649 F. Supp. 544, 550 (E.D.N.Y. 1986) (Rule 7(f) does not require the government "to disclose its evidence, or its legal theory," nor can a bill of particulars be used to "force[ the government] to describe the precise manner in which the crime is alleged to have been committed.") (internal citations and quotations omitted). Bills of particular "should not be used to provide the defendant with 'evidentiary detail' about the government's case." United States v. Persing, No. 06 CR 815 (BMC), 2008 WL 11344620, at *3 (E.D.N.Y. May 6, 2008). For that reason, courts have held that the "'whens,' 'wheres,' and 'with whoms'" of charged crimes are beyond the permissible scope of a bill of particulars. United States v. Muyet, 945 F. Supp. 586, 599 (S.D.N.Y. 1996); see also Mitlof, 165 F. Supp. 2d at 569 (citing Torres, 901 F.2d at 233-34).

If the information sought by the defendant is provided in the charging document or through some other means, including discovery, a bill of particulars is not warranted. See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004). Thus, motions for bills of particulars are routinely denied where, as here, the defendants are charged by speaking indictment and significant additional information has been supplied in discovery. See, e.g., United States v. Cordones, No. 11-CR-205 (AKH), 2022 WL 815229, at *8 (S.D.N.Y. Mar. 17, 2022) ("Courts routinely deny motions for bills of particulars where, as here, the charging document is a speaking indictment.") (collecting intra-Circuit cases); see also United States v. Aguilar, No. 20-CR-390 (ENV), ECF No. 39 (E.D.N.Y. 2021) (denying motion for bill of particulars where

information sought was overbroad in view of discovery provided, among other reasons); United States v. Huawei Technologies Co., Ltd., No. 18-CR-457 (AMD), ECF No. 303 (E.D.N.Y. 2021) (denying motion for bill of particulars seeking a list of alleged fraudulent statements where defendants were charged in a speaking indictment, were provided with "detailed guidance about the relevant statements," and were not confused about the nature of fraud scheme).

The defendant bears the burden of showing that denial of the requested particulars will result in "prejudicial surprise at trial or will adversely affect his rights." United States v. Maneti, 781 F. Supp. 169, 186 (W.D.N.Y. 1991).

## ARGUMENT

The lengthy Indictment provides the defendants with more than enough particularity about the nature of the charges against them. It describes the contours of the defendants' corrupt agreement, acts taken in furtherance of that corrupt agreement by all the defendants, including F. Carone, and the later acts committed by F. Carone and A. Carone to obstruct justice. The additional information sought by the defendants goes well beyond what Rule 7(f) requires and is contrary to the weight of Second Circuit authority, which disfavors using bills of particulars to preview the government's legal theories and unduly restricts how the government will prove its case against the defendants. The Motion should be denied.

### I. The Defendants Are Not Entitled to a Bill of Particulars Regarding the Charged Conspiracy

The Motion seeks particulars about the precise date, time and location of the defendants' corrupt agreement. Motion at 11-13. But a bill of particulars is not necessary because the Indictment is sufficiently specific. The corrupt agreement is clearly defined: F. Carone agreed to accept a series of bribes from Zhu and Chen through A. Carone in exchange for F. Carone's agreement to steer a multimillion-dollar Emergency Shelter Contract to the Microtel.

Ind. ¶ 14. The Indictment likewise specifies the precise date the contract was ultimately awarded (October 20, 2022), id. ¶ 33, and the method of paying and concealing the bribes (through A. Carone's law firm under the guise of a retainer agreement), id. ¶¶ 34-35, 37. It also details various meetings, emails, and text messages between the defendants and among relevant DSS officials in the lead-up to the Microtel's obtaining an Emergency Shelter Contract. Id. ¶¶ 17-19, 22-27, 29, 31-32.

That the Indictment alleges that the conduct at issue occurred on or about and between June 2022 and December 2023 does not render the charged bribery scheme any less comprehensible. The Indictment describes conduct that is relevant to the charged bribery scheme, including initial encounters among the defendants. That is neither remarkable nor controversial. See, e.g., United States v. Shteyman, No. 10-cr-00347 (SJ), 2011 WL 2006291, at *4 (E.D.N.Y. May 23, 2011) ("[T]his Circuit consistently sustains wide latitude with date ranges within the indictment where the indictment, as is the case here, tracks the language of the statutes defendants are charged with violating."); United States v. Starks, No. 1:24-cr-00126 (JLR), 2024 WL 4528169, at *5 (S.D.N.Y. Oct. 18, 2024) (citing Shteyman, 2011 WL 2006291, at *4, favorably for the same principle); United States v. Faltine, No. 13-cr-315 (KAM), 2014 WL 4370811, at *8-9 (E.D.N.Y. Sept. 2, 2014) (Matsumoto, J.) (denying motion for bill of particulars seeking, inter alia, "the exact acts and dates of acts attributable to him" even though indictment "set forth . . . the approximate date range during which the crimes were allegedly committed"); cf. United States v. Shkreli, 15-CR-637 (KAM), ECF No. 295 (July 28, 2017 E.D.N.Y.) ("The Superseding Indictment charges that the offenses at issue took place 'in or about' and 'between' certain dates. The proof need not establish with certainty the exact date of the alleged offenses. The law only requires a substantial similarity between the date alleged in the Superseding

Indictment and the date established by the evidence."). Here, the Indictment's reference to initial meetings and text messages between Zhu and F. Carone, for instance, demonstrates that Zhu repeatedly courted F. Carone before they ultimately formed a corrupt agreement. The exact date, time, and location of that agreement is not necessary for the defendants to prepare a defense, see Torres, 901 F.2d at 234, particularly where, as here, the object of the bribery scheme is precisely defined in the Indictment.

Indeed, courts have repeatedly rejected motions for bills of particular in cases involving conspiracy charges, where the defendants have made similar requests. In United States v. Persing, No. 06 CR 815 (BMC), 2008 WL 11344620 (E.D.N.Y. May 6, 2008), Judge Cogan, for example, wrote that, "[w]ith respect to conspiracy counts, defendants are not entitled to receive details of the government's conspiracy allegations in a bill of particulars and details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial. . . . There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge." Id. at *3. Likewise, this Court has previously denied motions for bills of particular seeking similar information. For instance, earlier this year in Clase, this Court denied a defendant's request for, among other particulars, information "specifying how [the defendant] allegedly entered the conspiracy" and the nature of the overt acts taken in furtherance of the conspiracy. 818 F. Supp. 3d at 486-87. The Court recognized that "[c]ourts routinely deny requests for a bill of particulars to identify how and when a defendant entered or participated in a conspiracy." Id. at 487 (collecting cases). Similarly, in Barret, this Court denied a similar request from a defendant for particulars include the "exact date(s), time(s) and places (including address)" of the conspiracy and the "manner in which he joined and left the alleged conspiracy."

824 F. Supp. 2d at 439. The Court found that "'[w]hat defendant[s] seek[] is in the nature of the 'wheres, whens, and with whoms' that Courts have held are beyond the scope of a bill of parciulars.'" Id. (quoting Mitlof, 165 F. Supp. 2d at 569). The same is true of the defendants' requests here. The detailed 29-page Indictment plainly satisfies the pleading standard set by Rule 7(c) and provides more than sufficient notice of the charges against the defendants.

The defendants' reliance on United States v. Snyder, 603 U.S. 1 (2024), is misplaced. See Motion at 11-12. It is of course true that the timing of the corrupt agreement is key in any § 666 prosecution; that is what separates unlawful bribes and kickbacks from non-criminal gratuities to state and local officials. It does not follow, however, that Snyder requires the government to specify the precise date and location of a corrupt agreement in a bill of particulars. United States v. Adams, No. 24 CR. 556 (DEH), 2025 WL 384558 (S.D.N.Y. Feb. 4, 2025), is on point. There, as here, the defendant sought "particularization of the timing of the agreements, arguing that 'the timing of the agreement is the key' in federal program bribery cases." Id. at *4. Nevertheless, the court rejected the defendant's motion for a bill of particulars:

> Mayor Adams is correct that the timing of an agreement is critical, but only insofar as bribery requires that a defendant agree to accept something of value prior to the contemplated or consummated action. See Snyder, 144 S. Ct. at 1959 (explaining that it is the timing of the agreement and not the timing of the payment that distinguishes an unlawful bribe from a lawful gratuity). The Government will thus have to prove a pre-existing agreement; but it need not commit to proving a precise date on which that agreement was formed. See United States v. Starks, No. 24 Crim. 126, 2024 WL 4528169, at *5 (S.D.N.Y. Oct. 18, 2024) (rejecting request for bill of particulars detailing "*specific* dates" on which agreement was allegedly reached, where indictment was sufficiently clear in "alleging the payment of bribes 'in exchange for'" benefits under Snyder and defendant could "prepare his defense accordingly"). As the Second Circuit has noted, "evidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts,

> receipts or public declarations of intentions." United States v. Friedman, 854 F.2d 535, 554 (2d Cir. 1988).

Id. (emphasis in original).

So too here. The nature of the information sought by the defendants—"when or where the alleged corrupt agreement was formed," Motion at 11—constitutes the very "wheres" and "'whens'" that are "'beyond the scope of a bill of particulars.'" Barret, 824 F. Supp. 2d at 439 (quoting Mitlof, 165 F. Supp. 2d at 569); see also United States v. Urso, 369 F. Supp. 2d 254, 272-73 (E.D.N.Y. 2005) ("[D]etails regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial."); United States v. Wilson, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006) (same); United States v. Matos-Perala, 691 F. Supp. 780, 791 (S.D.N.Y. 1988) ("[C]ourts have consistently rejected demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant or confederate.").

The cases cited by the defendants cannot bear the weight the defendants place on them. In United States v. Bazezew, 783 F. Supp. 2d 160 (D.D.C. 2011), the indictment charged 16 defendants in connection with a scheme to pay bribes to the Chairperson of the D.C. Taxi Commission. The court noted there was "no evidence that any of the alleged co-conspirators knew any of the other alleged co-conspirators before they appeared at the Chairperson's office," there was "no evidence that any of the alleged co-conspirators knew the Chairperson prior to that day," and "most of the alleged co-conspirators did not know and had not had any contact with the primary architects of the conspiracy." Id. at 164. The court denied most of the defendants' requests, including their request for "the exact date, time, and place when the conspiracy began." Id. at 168. Although the court ordered the government to provide information regarding what actions were taken by co-conspirators in furtherance of the conspiracy, it did so because there

was "no suggestion in the indictment that any of the 16 defendants did anything either before or after" their bribe payments "to join the conspiracy or to further its goals." Id. Here, the Indictment alleges, and the government, through Rule 16 discovery has provided evidence of, in-person meetings, calls, and texts between the defendants in furtherance of the bribery scheme over the course of many months. See Adams, 2025 WL 384558, at *5 ("Nor is Mayor Adams entitled to know what correspondence, conversation, or course of conduct the government thinks created an illicit agreement, beyond what he can already discern from the allegations, arguments, and discovery." (internal quotations omitted) (citing United States v. Skelos, No. 15-CR-317, 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015) ("[A] defendant is not entitled to disclosure of the manner in which the government will attempt to prove the charge, the precise manner in which the government will allege the defendant committed the crimes charged, or a preview of the government's evidence or legal theories.")). Thus, not only did the court in Bazezew deny most of the types of requests made by the defendants here, but the only information the court ordered the government to disclose concerned information that was entirely absent from the indictment—a deficiency not present here.

Next, in United States v. Siddiqi, No. 06 CR 377 SWK, 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007), another case cited by the defendants in the Motion, the defendant received approximately $16,000 in bribes in connection with a construction project at a New York public school. Id. at *2-4. But the complaint suffered from numerous flaws. It did not specify the federal program associated with the payments; the amount, date, or identity of the maker of the alleged bribes; or the work orders allegedly approved by Siddiqi. Id. at *3-4.[2] That

[2] Even so, Siddiqi fully rejected the defendants' demand for a "one-to-one mapping" of official acts exchanged for things of value, holding that it "would improperly restrict the Government's proof at trial." Id. at *3.

is not so here. The Indictment describes in detail the federal program at issue, the date of the bribe payments, the identity of the bribe-payors, and the object of the bribery scheme (the Emergency Shelter Contract). See, e.g., Ind. ¶ 37. Again, none of the deficiencies present in Siddiqi were present in this Indictment.

And in United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987), an insurance fraud case, the indictment alleged in threadbare fashion that "[t]he defendants would and did submit false claims for burglary losses to the Federal Insurance Administration," and "[t]he defendants would and did submit false claims to the New York Property Insurance Underwriting Association." Id. at 573-74. The Second Circuit observed that the case was "shrouded in mystery at the commencement of and throughout trial," because the government had provided four thousand documents to the defense but ultimately contended that only three were fraudulent. 820 F.2d at 574-75. See United States v. Rose, No. 19 CR. 789 (PGG), 2021 WL 2117119, at *15 (S.D.N.Y. May 24, 2021) (denying bill of particulars and distinguishing Bortnovsky as presenting a "needle in the haystack" problem). This case presents no such needle in a haystack.[3]

Because the Indictment clearly identifies the bribery scheme, the defendants are not entitled to the particulars on the date, time, and location of when the corrupt agreement was formed. E.g., Chen, 378 F.3d at 163 (district court did not abuse its discretion in denying

[3] The defendants also point to the indictments in United States v. Menendez, 23-CR-490 (S.D.N.Y. Jan. 2, 2024), and United States v. Smith, 13-CR-297 (S.D.N.Y. Apr. 18, 2013), claiming that "in other public corruption cases, indictments routinely provide the 'when' and 'where' that is missing here." Motion at 12. Setting aside whether the defendants' characterization of what is "routine" is accurate, whatever color those indictments provide does not set the benchmark for what is necessary under Rule 7 of the Federal Rules of Criminal Procedure.

defendant a bill of particulars as to the "exact time and place of each alleged act associated with each offense identified in the indictment").

II. The Defendants Are Not Entitled to a Bill of Particulars Regarding Official Acts

The defendants next argue that the government "should be required to provide specifics regarding the alleged official act(s) performed by Frank Carone." Motion at 13-16. However, the defendants ignore the plain fact that the performance of an official act, as opposed to the agreement to perform an official act, is not an element of any of the crimes charged in the Indictment.

In McDonnell v. United States, 579 U.S. 550 (2016), the seminal case on the "official act" requirement, the Supreme Court addressed this very issue with respect to, among other statutes, honest services wire fraud and honest services wire fraud conspiracy, holding that while the corrupt agreement must involve an agreement to perform an official act, the actual performance of an official act is not required:

> Under this Court's precedents, a public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agreed to do so. The agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain. Nor must the public official in fact intend to perform the 'official act,' so long as he agrees to do so.

Id. at 572 (internal citations omitted). With respect to the other bribery-related statues charged in the Indictment, namely violations of Section 666 and the Travel Act, the government's burden is even less onerous, as courts have repeatedly held that, with respect to those statutes, the corrupt quid pro quo need not involve an agreement to perform conduct meeting the "official act" standard laid out by the Supreme Court in McDonnell. See United States v. Ng Lap Seng, 934 F.3d 110, 132-33 (2d Cir. 2019) ("[T]he McDonnell 'official act' standard, derived from the quo component of bribery as defined by § 201(a)(3), does not necessarily delimit the quo components

of other bribery statutes, such as § 666[.]"); see also United States v. Adams, 760 F. Supp. 3d 6, 17 (S.D.N.Y. 2024) ("[W]hile § 201 requires an 'official act'—a formal exercise of governmental power with respect to a specific and focused matter to be decided upon—the Second Circuit has been unequivocal that § 666 does not."); United States v. Boyland, 862 F.3d 279, 291 (2d Cir. 2017) (holding Travel Act violation "do[es] not depend on the meaning of official act under § 201(a)(3)"). Accordingly, the Court can readily conclude that the defendants are not entitled to a bill of particulars regarding every official act that F. Carone performed when the actual performance of an official act is not an element of any charged offense.

Moreover, the Indictment plainly alleges an official act taken by F. Carone, stating that "in his official capacity as Chief of Staff, F. Carone directed City Official #1, then the DSS Commissioner, to reconsider the Microtel for an Emergency Shelter Contract. Despite DSS's prior independent assessment that the Microtel was not a suitable location for a temporary shelter, due to F. Carone's directive, City Official #1 did, in fact, cause DSS officials to reconsider the agency's decision." Ind. ¶ 20; see also id. ¶¶ 24, 27, 29, 31, 32, 34 (describing interactions between F. Carone and City Official #1 and reconsideration of the Microtel within DHS). Nothing more is required. See, e.g., Schwimmer, 649 F. Supp. at 550 (government may not "be forced [in a bill of particulars] to describe the precise manner in which the crime is alleged to have been committed" (citations and internal quotations omitted)); United States v. Walker, 992 F. Supp. 732, 739 (N.D.N.Y. 1996) ("Matters such as the exact time and place of the overt acts and names of the persons present are not properly the subject of a bill of particulars.") (citing United States v. Wilson, 565 F. Supp. 1416, 1438 (S.D.N.Y. 1983), disagreed with on other grounds by United States v. Reed, 773 F.2d 477 (2d Cir. 1985)); Wilson, 493 F. Supp. 2d at 372 (denying defendant's request for information concerning the "nature of overt acts committed

by" the defendant "in furtherance of the conspiracies"); United States v. Barrera, 950 F. Supp. 2d 461, 478 (E.D.N.Y. 2013) (same); United States v. Wedd, No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) (denying motion for bill of particulars where "the Indictment is a 'speaking' Indictment that provides a significant amount of detail as to the Government's theory of the case and the nature of the proof that will underlie the charges at trial").

Because the Indictment clearly alleges the performance of an official act and because the actual performance of an official act is not an element of any charged offense, the defendants need no additional information to make a motion to dismiss under McDonnell v. United States, 579 U.S. 550 (2016). Contra Motion at 10, 13-14. Requiring the government to disclose additional information would inappropriately force the government to "provide a preview of its legal theory" against the Defendants. Clase de la Cruz, 818 F. Supp. 3d at 487; see also Schwimmer, 649 F. Supp. at 550 (requiring the government to disclose its legal theory is beyond the scope of a bill of particulars); United States v. Feola, 651 F. Supp. 1068, 1131-32 (S.D.N.Y. 1987) (a bill of particulars must not "restrict unduly the Government's ability to present its case"); United States v. Wey, No. 15-cr-611 (AJN), 2017 WL 237651, at *17 ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories."); United States v. Savin, No. 00 CR. 45 (RWS), 2001 WL 243533, at *2 (S.D.N.Y. Mar. 7, 2001) ("A defendant will not be permitted to use . . . a request [for a bill of particulars] to compel the government to disclose the manner in which it will prove the charges or preview its evidence or legal theory."). "[I]t is not the function of a bill of particulars to allow defendants to preview the Government's

theory of its case." United States v. Murgio, 209 F. Supp. 3d 698, 722 (S.D.N.Y. 2016); Mitlof, 165 F. Supp. 2d at 569 (holding that a bill of particulars also should not be misused to compel the Government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories").

The cases cited by the Motion do not require any more than the Indictment already provides. See United States v. Lino, No. 00 CR. 632 (WHP), 2001 WL 8356, at *4 (S.D.N.Y. Dec. 29, 2000) (in 23-defendant RICO case with 26 counts, ordering bill specifying "whom [the defendant] agreed to bribe, the pension fund with which the bribe recipient was affiliated, and the amount of the bribe" but denying request for further detail; "Second Circuit authority clearly provides that a defendant is not entitled to a particularized outline of the Government's proof to be adduced at trial."); United States v. Aliperti, 867 F. Supp. 142, 149 (E.D.N.Y. 1994) (court was unable to determine whether the government's discovery "adequately inform[ed] Defendants of the particulars of any *quid pro quo*")[4]; United States v. Ramirez, 602 F. Supp. 783, 793 (S.D.N.Y. 1985) (ordering bill of particulars on the "eve of trial" in drug conspiracy case, where defendant was "mentioned only as one of ten co-conspirators" and "[n]one of the overt act allegations mention[ed]" the defendant).

Because the Indictment clearly identifies an official act taken by F. Carone, the defendants are not entitled to any more specificity. E.g., United States v. Ng, No. 15 Cr. 706

[4] In Aliperti, the defendants claimed they were unable to discern the particulars of several quid pro quo allegations, and the government argued that the discovery provided this information, and the court ordered further briefing. 867 F. Supp. at 149. Aliperti thus does not represent a precedent for ordering the government to provide in great detail each official act taken by the defendants. And in any event, the scant detail in Aliperti bears no resemblance to the Indictment here. See United States v. Issa, No. 17 Cr. 74 (CM), 2018 WL 461131, at *3-4 (S.D.N.Y. Jan. 9, 2018) (denying bill of particulars and distinguishing Aliperti and similar case as leaving the defendant "to guess at the nature of the bribery scheme").

(VSB), Dkt. 452 at 11 (S.D.N.Y. Apr. 26, 2017) (denying bill of particulars for official acts and the identities of co-conspirators, in light of detailed 31-page Indictment and "sufficient disclosures concerning the nature of the charged offenses by other means," including discovery and agent affidavits); United States v. Mandell, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying particularization of alleged misrepresentations where indictment was 34 pages long and government provided voluminous, organized discovery).

## III. The Defendants Are Not Entitled to a Bill of Particulars Regarding Obstruction of Justice

A. Carone and F. Carone assert that the Indictment does not adequately detail the obstructive acts underlying Count Ten and ask the Court to require the government to "state whether its obstruction theory is limited to the alleged promissory note scheme described in Paragraph 47, or whether the government intends to rely on a different theory of obstructive conduct at trial." Motion at 17.

Paragraph 47 of the Indictment sufficiently describes the obstructive conduct charged therein. It alleges that the defendants fabricated evidence by (i) creating and executing a document purporting to be a promissory note, (ii) backdating that note to January 2022, and (iii) subsequently causing that note to be provided to federal investigators. The date range charged in Count Ten—in or about and between July 2024 and October 2025—indicates that the charge sweeps in both the creation of the backdated note (in July 2024) and the subsequent provision of that note to federal investigators (in October 2025). The assertion, therefore, that the Indictment "appears to be written deliberately to leave the door open," Motion at 17, is misplaced.

To the extent the defendants' Motion is designed to limit what proof the government may offer to establish those obstructive acts, the Motion is improper. As with the

defendants' other requests for particulars, A. Carone and F. Carone's request for particulars here "should not be granted where the consequence would be to restrict unduly the Government's ability to present its case" by "confin[ing] the Government's proof to [the] particulars furnished." Feola, 651 F. Supp. at 1132. Nor may it be used to require the government to specify its legal theory, its evidence, or the precise manner in which the crime is alleged to have been committed. Schwimmer, 649 F. Supp. at 550 (internal citations and quotation marks omitted); United States v. Albunio, No. 91-CR-0403 (ILG), 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.").

Notably, the government has furnished materials, including search warrant affidavits, to the defendants that provide further details regarding F. Carone and A. Carone's efforts to obstruct justice beyond the allegations in the four corners of the Indictment. And because some of that evidence includes information proffered to the government by defense counsel about the circumstances surrounding the creation of the backdated promissory note,[5] the parties have been engaged for several weeks about ways to resolve the potential conflicts of interest arising from these circumstances.[6] As part of those discussions, the government has

[5] Counsel for A. Carone produced the promissory note to the government, and counsel for both A. Carone and F. Carone made certain representations to the government regarding the promissory note, which information the government may seek to introduce as evidence of the crime. See United States v. Menendez, 23-CR-490 (S.D.N.Y. 2023), Dkt. No. 473 ("[W]hen certain statements are made that in all probability had to have been confirmed by the defendant, the jury is permitted to interfere the client's role in an attorney's statement."). However, to be clear, at present, the government has no reason to believe that counsel for A. Carone or F. Carone knowingly participated in a scheme to obstruct justice or otherwise engaged in wrongdoing.

[6] The government intends to file an application, pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), and its progeny, after either resolving the potential conflicts or exhausting its efforts with defense counsel to do so.

offered to resolve the conflicts by way of a stipulation regarding certain facts underlying the obstruction of justice charges, which it provided to the defense several weeks ago. As relevant to this motion, the fact stipulation describes additional evidence the government would seek to offer in support of the charged obstruction. Thus, regardless of whether the parties are able to resolve the potential conflicts by way of stipulation, that the government has already previewed its case against the defendants is further grounds for denying the defendants' motion.

## CONCLUSION

For the reasons described above, the government respectfully requests that the Court deny the Motion in full.

Dated: Brooklyn, New York
September 8, 2026

Very truly yours,
MICHAEL G. CONSIDINE
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By: /s/
Catherine M. Mirabile
Sara K. Winik
Adam R. Toporovsky
Eric Silverberg
Michael McGuinness
Assistant U.S. Attorneys
(718) 254-7000