UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- X

UNITED STATES OF AMERICA,

v.

ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, AND YAN PO ZHU,

Defendants.

---------------------------------------------------- X

No. 1:26-cr-00177 (KAM)

**DEFENDANTS ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, AND YAN PO ZHU'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR A BILL OF PARTICULARS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ........................................................................................................ 3

I. Defendants Are Entitled to Particulars Specifying When the Alleged Corrupt Agreement Was Formed. ........................................................................................ 3

II. Defendants Are Entitled to Particulars Specifying the Alleged Wrongful Official Acts ........................................................................................ …8

III. Defendants Are Entitled to Particulars Specifying the Scope of the Obstruction Charge ........................................................................................ 12

CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES


**Case** **Page(s)**

*McDonnell v. United States*,
579 U.S. 550 (2016) ........ 1, 8, 9, 10, 11

*Snyder v. United States*,
603 U.S. 1 (2024) ........ 1, 3, 7

*United States v. Adams*,
2025 WL 384558 (S.D.N.Y. Feb. 4, 2025) ........ 3, 5, 7

*United States v. Barret*,
824 F. Supp. 2d 419 (E.D.N.Y. 2011) ........ 6

*United States v. Bazezew*,
783 F. Supp. 2d 160 (D.D.C. 2011) ........ 7, 8

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987) ........ 7, 8

*United States v. de la Cruz*,
818 F. Supp. 3d 472 (E.D.N.Y. 2026) ........ 6, 7

*United States v. Mandell*,
710 F. Supp. 2d 368 (S.D.N.Y. 2010) ........ 10

*United States v. Ng*,
No. 15-cr-706 (VSB) (S.D.N.Y. Apr. 26, 2017) ........ 10

*United States v. Persing*,
2008 WL 11344620 (E.D.N.Y. May 5, 2008) ........ 6

*United States v. Siddiqi*,
2007 WL 549420 (S.D.N.Y. Feb. 21, 2007) ........ 7

*United States v. Wedd*,
2016 WL 1055737 (S.D.N.Y. Mar. 10, 2016) ........ 10

**PRELIMINARY STATEMENT**

As set forth in Defendants' motion, the Indictment in this case, despite its 29-page length, fails to allege basic facts that are critical to determining whether the alleged conduct is a crime. And the facts the Indictment does contain contradict the government's own theory of criminality. To remedy this, Defendants are entitled to the most basic of information: when the supposed agreement between Frank Carone and Yan Po Zhu took place (and crucially, whether it occurred before or after the alleged official action by Frank Carone), and what official act or acts Frank Carone actually took or agreed to take—*i.e.*, the "*pro*" and "*quo*" in the alleged *quid pro quo*. The government's opposition is telling, and troubling: it mischaracterizes the information Defendants seek and asserts a liberty to present the jury with a moving target that waters down what the Supreme Court and the Second Circuit require for public corruption charges to stand.

First, the government repeatedly asserts Defendants are asking for details of the charged conduct, the manner of proof, and a preview of the government's legal theories. But Defendants seek none of those things. Defendants simply seek when the alleged corrupt agreement was formed and the official act(s) that Frank Carone allegedly took or agreed to take. Defendants are entitled to this basic information because it could be dispositive as to whether the government has alleged a crime at all. Whether the alleged agreement was formed before or after the alleged official act is central to whether the alleged payments (the "*quid*") would be an unlawful bribe or a lawful gratuity under *Snyder v. United States.* And the nature of Frank Carone's alleged "directive" for City Official #1 to "reconsider" the Microtel could determine whether the charges properly allege a crime under *McDonnell v. United States*.

Second, the government doubles down on the vague and contradicting allegations contained in the Indictment, insisting that Defendants are not entitled to any information that would

provide the clarity necessary to defend against the charges. The government does not attempt to reconcile the fact that the Indictment contains allegations that confirm there could not have been an agreement between Frank Carone and Mr. Zhu in June 2022, as the Indictment alleges, or even well into September 2022, after most of the social interactions and text messages featured in the Indictment took place. As a result, it is impossible for Defendants (or the Court) to determine when any alleged corrupt agreement was formed, and whether it was before or after the official act(s) that Frank Carone allegedly took—a critical detail that goes to the viability of the government's case. Instead, the government insists that the timing of the corrupt agreement is immaterial so long as it falls somewhere within the eighteen-month span of the charged scheme—a position irreconcilable with its acknowledgement that timing of the agreement is "key" under *Snyder*.

In addition, rather than clarify what the Indictment means by alleging that Frank Carone "directed" City Official #1 to "reconsider" the Microtel, the government claims its charges do not require any official act at all. But even under the government's theory—that all that is required is an *agreement* to perform an official act—the Indictment still falls short because the object of the alleged agreement (to "steer" a contract to the Microtel, Ind. ¶ 14) is itself too vague to constitute an official act under *McDonnell*.

The government's refusal to identify information that is required for any public corruption prosecution—while repeatedly citing the "length[]" of its "29 page, 74 paragraph" Indictment, Opp. at 3, 9—is a concession by the government that there is a hole at the center of this case. After more than two years of investigation and grand jury proceedings, why can't the government simply say what official act(s) Frank Carone performed (or agreed to perform) and when he entered into the supposed agreement to take those official acts? This information is necessary for Defendants

to prepare their defenses and to determine whether to file motions to dismiss the Indictment in advance of trial.

The government should therefore be directed to provide the requested particulars.

## ARGUMENT

### I. Defendants Are Entitled to Particulars Specifying When the Alleged Corrupt Agreement Was Formed.

Whether the alleged corrupt agreement was formed before or after Frank Carone's purported official act(s) to benefit the Microtel is not an evidentiary detail or a question of the manner of proof—it is determinative of whether those acts were criminal at all. Under *Snyder*, a bribery charge requires an agreement to accept something of value ***before*** taking an official action. *See Snyder v. United States*, 603 U.S. 1, 19 (2024); *see also United States v. Adams*, 2025 WL 384558, at *4 (S.D.N.Y. Feb. 4, 2025). Thus, as the government acknowledges, "the timing of the corrupt agreement is key in any § 666 prosecution," because "that is what separates unlawful bribes and kickbacks from non-criminal gratuities." Opp. at 12; *see also Snyder*, 603 U.S. at 19.

But despite conceding as much, the government ignores that the Indictment nowhere specifies whether the alleged corrupt agreement was formed before or after Frank Carone supposedly took action to benefit the Microtel (the timing of which is likewise unclear from the Indictment). The government contends that it does not have to allege when within the eighteen-month period from June 2022 through December 2023 the supposed agreement was entered into so long as the Indictment alleges the "object of the bribery scheme." Opp. at 9–11. That is a non-sequitur and is not the law. An indictment must give sufficient notice of what conduct the government is alleging is criminal. This Indictment fails to do so because if an agreement was formed only after Frank Carone took an official act that benefited the Microtel, then there was no crime at all. *See Snyder*, 603 U.S. at 19.

The need for particulars here is particularly acute because of the Indictment's internal contradictions about the timing of the agreement—contradictions which further obfuscate whether the government has evidence that an agreement preceded the alleged official act(s) taken by Frank Carone. For example, the Indictment quotes text messages showing that Mr. Zhu did not decide to pay Anthony Carone until sometime after October 6, 2022, suggesting that no corrupt agreement existed before that date—yet the acts Frank Carone allegedly took to benefit the Microtel (to the extent they are decipherable in the Indictment) all occurred ***before*** October 2022. *See* Mot. at 6–7; Ind. ¶¶ 20–27, 36.

Indeed, the government's opposition lays bare its own confusion about when the alleged corrupt agreement was supposedly formed. The government appears to *acknowledge* that, despite the Indictment's allegation that the purported conspiracy began in or about June 2022, any such conspiracy (if there was one) was formed at some unidentified time months later. For example, in response to the Defendants' opening brief—which pointed out that Frank Carone did not even know the name or address of the Microtel as of September 19, 2022—the government asserts that the "initial meetings and text messages" between Mr. Zhu and Frank Carone referenced in the Indictment "demonstrate[] that [Mr.] Zhu repeatedly courted [Frank] Carone ***before they ultimately formed a corrupt agreement***." Opp. at 11 (emphasis added). That is a remarkable admission that the conspiracy was not formed at the time the Indictment alleges it was. Because "courting" necessarily reflects the absence of intent by Frank Carone, the government cannot simultaneously maintain that a series of meetings and text messages beginning in June 2022 evidences a corrupt agreement *and* that the "initial" meetings and messages involved a "court[ing]" process that predated any agreement. As another example: the Indictment alleges that Mr. Zhu "continued soliciting" Frank Carone's assistance on September 19 and did so again on September

26, 2022, Ind. ¶¶ 23, 26, indicating the government's view that Mr. Zhu pursued Frank Carone without any mutual agreement for months after the conspiracy allegedly began. Based on the government's admissions, the theory must be that, at some point after September 26, 2022, the interactions between Mr. Zhu and Frank Carone crossed the line from courtship and solicitation to conspiracy. But when? The government has not properly alleged it, including whether any agreement was formed before Frank Carone took any alleged official action on Mr. Zhu's behalf and before Mr. Zhu entered into an agreement with Anthony Carone.

The government has no explanation for the chronological inconsistencies in the Indictment and the materials produced in discovery and instead insists that it need not identify the date that the conspiracy began because that information goes beyond the scope of a bill of particulars. Opp. at 13. But none of the cases relied on by the government presents the issue here, where the requested information could be dispositive as to whether there was even any unlawful conduct constituting the object of the alleged conspiracy.

The government relies most heavily on the *Adams* case. In *Adams*, the court denied a bill of particulars because it was "sufficiently discernible" from the indictment that the agreement predated the alleged official acts. *Adams*, 2025 WL 384558, at *3–4. But the *Adams* indictment alleged, among other things, an express understanding that benefits were provided "in exchange for" Adams's assistance, that Adams responded "I know," after the co-conspirators demanded that it was his "turn" to reciprocate, and that Adams pressured the City's fire department immediately afterward. *United States v. Adams*, Ind. ¶¶ 36, 38(g)–(k), No. 24-cr-00556 (S.D.N.Y. Sept. 24, 2024). It was therefore sufficiently clear that the indictment charged a bribery agreement rather than a gratuity agreement. *See Adams*, 2025 WL 384558, at *3–4. Here, by contrast, the Indictment alleges that the conspiracy began in June 2022 while also alleging that Mr. Zhu was

still "soliciting" Frank Carone's assistance months afterwards, Ind. ¶¶ 20, 23, 26, and quoting communications showing that Mr. Zhu had not even decided to pay Anthony Carone (the alleged mechanism for bribing Frank Carone) until sometime after October 6, 2022—well after Frank Carone is alleged to have taken action to benefit the Microtel, Ind. ¶¶ 20–27, 36. Besides a single introductory paragraph, the Indictment never expressly alleges that any action by Frank Carone was taken in exchange for anything of value from Mr. Zhu. And the discovery and *Brady* evidence only further undermines the Indictment's allegations. Here, unlike in *Adams*, it is simply not clear whether the indictment properly charges a bribery theory.

The other cases relied upon by the government are likewise distinguishable. In both *Barret* and *Persing*, where defendants' requests for particulars regarding the charged conspiracy schemes were denied, the indictments did not contain any internal inconsistencies about the core facts that would make the difference between conduct that is criminal and that is not, and the government's discovery clarified rather than contradicted the indictments' allegations. *See United States v. Barret*, 824 F. Supp. 2d 419, 439–40 (E.D.N.Y. 2011) (Matsumoto, J.) (denying particulars where the complaint "include[d] the dates of the alleged events and the places where they occurred," and the government's discovery included surveillance video and physical evidence which provided "sufficient information about the details of the charges" each defendant faced); *United States v. Persing*, No. 06 CR 815 (BMC), 2008 WL 11344620, at *3 (E.D.N.Y. May 5, 2008) (denying particulars where superseding indictment and discovery, which included a recorded conversation in which the defendant was "allegedly agreeing to illicitly distribute narcotics," allowed the defendant to identify with sufficient particularity the nature of the charge against him). Similarly, in *Clase*, this court denied defendants' requests for particulars where the indictment did not contain any contradictory allegations regarding the timing of the alleged conspiracy and instead provided

"specific information" about the charged conduct, and where the government had already been directed by the court to produce evidence regarding specific, dated instances of the alleged illegal activity. *See United States v. de la Cruz*, 818 F. Supp. 3d 472, 486–87 (E.D.N.Y. 2026) (Matsumoto, J.).

The government also tries to distinguish *Bazezew*, where the court granted a bill of particulars, on the basis that the court ordered the government to disclose only information "entirely absent from the indictment." Opp. at 14. But the key issue in *Bazezew* is exactly what is present here: the indictment's chronology was internally inconsistent. *See United States v. Bazezew*, 783 F. Supp. 2d 160, 168–69 (D.D.C. 2011); Mot. at 12–13. The *Bazezew* indictment alleged that the bribery conspiracy began on a single date but identified no overt act connecting any defendant to the conspiracy until much later; in light of this gap, the court ordered the government to specify the overt acts predating each defendant's entry into the conspiracy so the defendants could adequately prepare for trial. *See id.* A bill of particulars is likewise warranted here, where the Indictment's inconsistencies are far more glaring than in *Bazezew*.[1]

As *Snyder* and *Adams* recognize, whether the corrupt agreement was reached before the alleged official act took place is critical to whether any crime occurred at all. This information is critical for Defendants to determine whether to file motions to dismiss or seek to narrow the time periods of the charged conspiracies. Because the Indictment does not coherently answer that question—but instead muddies the issue with internal inconsistencies and contradictions—Defendants are entitled to particulars on the timing of the alleged corrupt agreement. *See United*

---

[1] The government's attempts to distinguish *Siddiqi* and *Bortnovsky* are also unavailing. Those cases involve indictments that, like the Indictment here, left defendants unable to determine the specific acts within the charged scheme on which the government intended to base its charges. See *United States v. Siddiqi*, 2007 WL 549420, at *3–4 (S.D.N.Y. Feb. 21, 2007); *United States v. Bortnovsky*, 820 F.2d 572, 574–75 (2d Cir. 1987).

*States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (district court erred in denying bill of particulars motion where "appellants were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information"); *Bazezew*, 783 F. Supp. 2d at 168–69 (ordering government to provide dates of conversations between alleged co-conspirators).

**A. Defendants Are Entitled to Particulars Specifying the Alleged Wrongful Official Acts.**

Defendants requested an answer to a simple question: what act or acts did Frank Carone allegedly perform, or agree to perform? The government refused to provide an answer, and its opposition attempts to elide the alleged *quo* or official act that is the most critical component of any corruption case following *McDonnell v. United States*. The government's refusal to provide this required information suggests that, after more than two years of investigation, the government cannot prove that Frank Carone took a wrongful official act and is hoping the Court grants it the liberty of proceeding to trial on allegations that may not amount to criminal conduct. The government's opposition only highlights how the Indictment leaves Defendants attempting to defend against a moving target.

First, while the opposition repeatedly insists that the Indictment "plainly" and "clearly" alleges official action taken by Frank Carone, it does not explain how the Indictment's vague allegations about the nature of that official act are sufficient to allow Defendants to prepare their defense. The government relies entirely on the allegations in paragraph 20 of the Indictment: "[I]n his official capacity as Chief of Staff, F. CARONE directed City Official #1, then the DSS Commissioner, to reconsider the Microtel for an Emergency Shelter Contract." In other words, the totality of official action identified by the government is Frank Carone's alleged "direct[ive]" to City Official #1 to "reconsider" the Microtel. *See* Opp. at 17; Ind. ¶ 20. But as detailed in

Defendants' opening brief, there is an inherent tension between "direct[ing]" City Official #1 versus asking him to "reconsider" a decision, and that tension could be the difference between permissible and impermissible conduct under *McDonnell*. *See* Mot. at 13–14; *McDonnell v. United States*, 579 U.S. 550, 572–74 (2016). For instance, if Frank Carone had ordered City Official #1 to approve the Microtel for an emergency contract, that would constitute an official act under *McDonnell*, but if Frank Carone simply asked City Official #1 to reconsider the Microtel without applying pressure, that may not constitute an official act. *See McDonnell*, 579 U.S. at 572–74 (defining "official act" to include "using [an] official position to exert pressure on another official to perform an 'official act'"). This exact issue was present in *McDonnell*: the government alleged that Governor McDonnell used his official power to help a businessman (who had provided him and his wife with money and other benefits) promote a dietary supplement by, among other things, having the state initiate a research study about the supplement. *Id*. at 550–51. To assist the businessman, the governor arranged meetings for state officials to discuss the supplement with the businessman, raised the supplement with his staff, and promoted the supplement at a meeting of state officials. *Id*. at 557, 560–61. The Supreme Court found that none of those actions violated the law because "setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information. . . does not qualify as a decision or action on the pending question whether to initiate the study." *Id.* at 553–54. Accordingly, if all Frank Carone did was ask City Official #1 to "reconsider" the Microtel, that likely is insufficient as a matter of law under *McDonnell.* The Indictment does not need to tell the defense how it will prove what Frank Carone said, but it does need to provide the government's theory of what he allegedly did with more granularity than the vague word "directed."

The government's opposition does not attempt to resolve this tension in the Indictment's

characterization of the alleged official act. Nor does it grapple with the discovery and *Brady* disclosures providing a clear non-criminal explanation for why the Microtel was approved for an emergency migrant housing contract. *See* Mot. at 7–9. And while the opposition points to alleged interactions between Frank Carone and City Official #1 to ostensibly illustrate how Frank Carone gave the purported directive, the Indictment offers no detail about what Frank Carone said or did during those interactions that would shed light on whether he exerted any pressure on City Official #1. *See* Opp. at 17 (citing Ind. ¶¶ 24, 27, 29, 31, 32, 34). The Government, of course, has interviewed City Official #1 and is well aware of whether City Official #1 recalled discussing the Microtel with Frank Carone; and if so whether Frank Carone pressured him to approve it for an emergency migrant housing contract. And yet the Indictment glaringly omits this information—information on which the very existence of potentially criminal conduct could hinge.

The cases relied upon by the government do not support its position because none involve an indictment that fails to allege sufficient facts to know whether the challenged conduct rose to the level of an unlawful *quo*, nor did they involve discovery and *Brady* disclosures exacerbating that insufficiency. In *Ng* and *Mandell*, the courts denied particulars where the indictment and the government's disclosures by other means, including discovery and agent affidavits, sufficiently apprised defendants of the nature of the charged offenses. *See United States v. Ng*, No. 15-cr-706 (VSB), Dkt. 452 at 11 (S.D.N.Y. Apr. 26, 2017); *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010). Similarly, in *Wedd*, the courts denied particulars because the indictment provided "a significant amount of detail as to the Government's theory of the case and the nature of the proof that will underlie the charges at trial," leaving no ambiguity for a bill of particulars to resolve. *United States v. Wedd*, No. 15-cr-616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016). Here, by contrast, the Indictment is ambiguous on its face because it alleges that Frank

Carone "directed" City Official #1 to "reconsider" the Microtel without providing any specifics as to what Frank Carone said or otherwise conveyed to City Official #1 in giving this directive.

The government also claims that performance of an official act is not a formal element of the charged counts and all the government needs to prove is that Frank Carone "agreed" to take official action. Opp. at 16–17. That argument is problematic for at least two reasons. First, as set forth in detail in this motion, the government refuses to provide basic information about the alleged agreement. So, the government is asking the Court to permit it to proceed to trial without identifying the official act(s) at issue *and* without providing any actual information about the alleged agreement or when it was formed. That is the very definition of being forced to defend against a moving target. Second, the Indictment's one specific allegation about the nature of the purported agreement—that Frank Carone "agreed to steer" a contract to the Microtel, Ind. ¶ 14—provides no clarity at all. The word "steer" encompasses conduct that under *McDonnell* would not constitute official action. A public official can try to "steer" the approval of a contract by doing exactly what *McDonnell* holds is *not* official action: by arranging meetings, making introductions, gathering information, and other actions that do not involve putting pressure on another official.

The particulars that the government refuses to provide could be instrumental in determining whether Frank Carone performed an act sufficient to support any of the *quid pro quo* bribery charges—and thus for Defendants to determine whether to file motions to dismiss. In requesting these particulars, Defendants are not attempting to preview the government's evidence or trial strategy; they are asking a simple question about what act Frank Carone allegedly performed or agreed to perform, the answer to which will provide the clarity necessary to determine whether Frank Carone's alleged conduct meets the *McDonnell* standard for an official act.

## II. Defendants Are Entitled to Particulars Specifying the Scope of the Obstruction Charge.

The government contends that Defendants Frank and Anthony Carone are not entitled to particulars regarding Count Ten because paragraph 47 of the Indictment "sufficiently describes the obstructive conduct charged," and the charged date range indicates that Count Ten "sweeps in both the creation of the backdated note (in July 2024) and the subsequent provision of that note to federal investigators (in October 2025)." Opp. at 20. But Count Ten does not say that; there is no "to wit" clause, and there is thus nothing to limit the government from trying to prove an entirely different set of conduct. For instance, in its bond letter, the government alleged other efforts to obstruct the investigation. If the obstruction charge is limited to the provision to the government in response to a subpoena of a promissory note that purports to be dated from 2022 but was in fact created later, then the government should be required to state as much in a bill of particulars. Without formal confirmation and with no "to wit" clause, Defendants cannot be sure whether Count Ten encompasses conduct between July 2024 and October 2025 beyond what is alleged in paragraph 47 of the Indictment and are left to defend against an open-ended charge.

While the government points to search warrant affidavits and a proposed stipulation provided to Defendants as a "preview[]" of its obstruction case, Opp. at 22, these documents are not an adequate substitute for confirmation that at trial the government will not seek to prove a completely different theory of obstruction. If the scope of Count Ten is limited to what the government represents in its opposition, confirming that position in a bill of particulars will not impose any burden on the government or force the government to preview any evidence or legal theories beyond what has already been disclosed. Accordingly, the government should be required to provide particulars specifying that Count Ten is limited to the conduct in Paragraph 47, or, if Count Ten is based on additional conduct, identifying such conduct.

## CONCLUSION

For these reasons and those in Defendants' Motion for a Bill of Particulars, Defendants respectfully request that the Court order the government to provide the requested particulars.

Dated: New York, New York
September 14, 2026

Respectfully submitted,

**COOLEY LLP**

By: *__/s/ Andrew D. Goldstein__*
Andrew D. Goldstein

Russell Capone
Rona S. Proper
55 Hudson Yards
New York, New York 10036
Phone: (212) 479-6000
Email: agoldstein@cooley.com
rcapone@cooley.com
rproper@cooley.com

**AGNIFILO INTRATER LLP**

Marc A. Agnifilo
Jacob Kaplan
Karen Friedman Agnifilo
Zach Intrater
140 Broadway, Suite 4530
New York, New York 10036
Phone: (646) 205-4350
Email: marc@agilawgroup.com
jacob@agilawgroup.com
karen@agilawgroup.com
zach@agilawgroup.com

**AIDALA, BERTUNA & KAMINS, P.C.**

Arthur L. Aidala
546 Fifth Avenue
New York, New York 10036
Phone: (212) 486-0011
Email: aidalaesq@aidalalaw.com

*Attorneys for Defendant Frank V. Carone*

**JENNER & BLOCK LLP**

Katya T. Jestin
Andrew Rohrback
1155 Avenue of the Americas
New York, New York 10036
Phone: (212) 891-1623
Email: kjestin@jenner.com
arohrbach@jenner.com

**WHARTON LAW PLLC**

Kendra Wharton
500 S. Australian Ave
West Palm Beach, Florida 33401
Phone: (561) 247-5279
Email: k.wharton@whartonlawpllc.com

**WENGER & ARLIA LLP**

John Arlia

20 Vesey Street, Suite 210
New York, New York 10007
Phone: (212) 566-6262
Email: john.arlia@yahoo.com

*Attorneys for Defendant Anthony J. Carone*

**COZEN O'CONNOR**

J. Bruce Maffeo
3 WTC, 175 Greenwich Street
Ste 55th Floor
New York, New York 10007
Phone: (212) 883-4951
Email: jbmaffeo@cozen.com

**MATTHEW WHITNEY BRISSENDEN**

Matthew W. Brissenden
666 Old Country Road, Suite 501
Garden City, New York 11530
Phone: (516) 817-4551
Email: mbrissenden@scaringlaw.com

**STEPHEN P. SCARING P.C.**

Stephen P. Scaring
666 Old Country Road, Suite 501
Garden City, New York 11530
Phone: (516) 683-8500
Email: sscaring@scaringlaw.com

*Attorneys for Defendant Yan Po Zhu*

**JOHN CARMAN ESQ.**

John F. Carman
66 Old Country Road, Suite 501
Garden City, New York 11530
Phone: (516) 683-3600
Email: john@johncarmanlaw.com

*Attorney for Defendant Crystal Chen*