UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, AND YAN PO ZHU,<br><br>Defendants. | : | No. 1:26-cr-00177 (KAM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT FRANK V. CARONE'S MOTION TO SUPPRESS AND FOR A *FRANKS* HEARING**

## Table of Contents

**Page**

**PRELIMINARY STATEMENT** .......... 1
**ARGUMENT** .......... 1
**I. The iCloud Affidavit Relied Upon Materially False Information to Establish Probable Cause** .......... 2
a. The Government Does Not Meaningfully Dispute that the iCloud Affidavit's Statements Are False .......... 2
b. The Motion Has Made a Substantial Showing of At Least Recklessness .......... 4
c. The Omitted and Misrepresented Evidence Is Material .......... 6
**II. The Government Lacked Sufficient Probable Cause That Frank Carone's Phone Contained Relevant Evidence** .......... 7
a. The Phone Affidavit's Deletion Theory Was Knowingly or Recklessly False and Misleading .......... 8
b. The Omitted and Misrepresented Information Was Material .......... 9
**CONCLUSION** .......... 10

## PRELIMINARY STATEMENT

The Government's opposition ("Opposition" or "Opp.") highlights the misrepresentations and inaccuracies upon which the search warrants for Frank Carone's iCloud and cellphone rest. The Opposition does not meaningfully challenge the facts set forth in the motion ("Motion" or "Mot."). Instead, while largely conceding the falsity of the statements made by the Government's agent, the Opposition contends that those misstatements are unimportant and recites allegations from the Indictment in an effort to divert the Court's attention from the actual facts. But the misstatements were both material to probable cause and, at a minimum, recklessly made. They establish that, on the basis of a corrected record, the Government lacked probable cause that the *specific devices* at issue in the warrants contained incriminating evidence. The Government's failure to make this showing warrants a *Franks* hearing so that the Court may have the benefit of the full record, sworn testimony, and accurate facts.

## ARGUMENT

Probable cause to issue a search warrant requires the Government to make a two-part showing. The Government must have (1) probable cause a crime was committed, and (2) probable cause to believe that evidence of such crime *is located in the place or device to be searched*. *United States v. Banyan*, 791 F. Supp. 3d 388, 393-94 (S.D.N.Y. 2025). The Opposition dwells almost exclusively on the first prong. It fails, however, to meaningfully engage with the false information relied upon by the Government's special agent in attempting to satisfy the second: whether, in the absence of that false information (some of which the Government concedes), there was sufficient probable cause to believe that the specific devices sought by the warrants would have evidence of the crimes the Government seeks to prosecute. As discussed further below, there was not.

## I. The iCloud Affidavit Relied Upon Materially False Information to Establish Probable Cause

In seeking to establish probable cause that Frank Carone's iCloud would contain evidence relevant to the crimes alleged, the iCloud Affidavit rested upon a series of demonstrably false statements: (i) that IP addresses showed Frank Carone "controlled" the Flagstar Account, (ii) that he controlled it "at all relevant times," and (iii) that Frank Carone personally "effectuated the transfers" from the Flagstar Account to his American Express accounts. iCloud Aff. ¶¶ 28, 34.

### a. The Government Does Not Meaningfully Dispute that the iCloud Affidavit's Statements Are False

The Government spends large portions of its Opposition arguing the iCloud Affidavit established probable cause to believe a crime was being committed. Opp. 4-7, 15-17 (rehashing Indictment allegations). That is beside the point. The question is whether there was probable cause to establish Frank Carone's iCloud account would contain evidence of such crime. On that score, the portion of the Affidavit articulating probable cause relied on an IP address analysis—comparing addresses that accessed the Flagstar Account to addresses that accessed Frank Carone's phone—to claim Frank Carone "**controlled [the Flagstar Account] at all relevant times**" and that evidence of such control would be found on the iCloud. iCloud Aff. ¶¶ 28-34.

The Opposition tacitly—and in some cases explicitly—concedes the iCloud Affidavit's IP address analysis was wrong and Frank Carone *did not control* the Flagstar Account, contrary to Special Agent ("SA") Cunder's representations. Specifically, in arguing Frank Carone controlled the Flagstar account, the iCloud Affidavit pointed to three IP addresses[1] used to access the Flagstar Account, which addresses were "also used to access the [iCloud] Account approximately 885 times" "during the same period." iCloud Aff. ¶¶ 31-32. But this is false as to each address.

[1] Unless otherwise noted, capitalized terms have the same meaning as those in the Motion.

First, IP address 38.140.163.118 was *never* used by Frank Carone's iCloud Account in 2022—i.e., the year most "relevant" to the alleged scheme. Tappeto Aff. ¶¶ 14, 19(a). SA Cunder pointed to this IP address specifically as the one used to access the American Express portal on each date a payment was made from the Flagstar Account. iCloud Aff. ¶ 33. Even the Government concedes the affidavit's falsity on this point. Opp. 22; *see also United States v. Kostin*, 2025 WL 1504409, at *16 (S.D.N.Y. May 27, 2025) (granting suppression of evidence where affiant relied on erroneous records and acknowledging "[t]he Government concedes this point").

Second, IP address 50.74.255.170—which SA Cunder claimed was used to access the iCloud Account 403 times "during the same period" as the offense—was actually used by the iCloud Account just 11 times in 2022. iCloud Aff. ¶ 32; Tappeto Aff. ¶ 19(c). And finally, IP address 67.247.104.223 was used to access the Flagstar Account in only two instances in all of 2022, even though the iCloud Account used it 439 times that year. Tappeto Aff. ¶ 19(b); *see United States of America v. Alex Ricaurte Cruz*, 2026 WL 3016761, at *3 (E.D.N.Y. Oct. 7, 2026) (*Franks* hearing granted where evidence of multiple users raised "serious questions" about probable cause).

Tellingly, the Government backpedals from SA Cunder's sworn testimony that the IP addresses demonstrate Frank Carone's control over the Flagstar Account "at all relevant times." Instead, it equivocates that "any amount of control" or even mere "access" Frank Carone may have had to the Flagstar Account—which is not what SA Cunder told the magistrate—would have been enough for probable cause. Opp. 22-23.[2] Even were that so, the data does not suggest such access. At best, the Government identifies a few overlapping IP address hits on which Frank Carone's

[2] The Government also points to two December 2022 dates that are nowhere in the affidavit. *Id.* at 22. But the Government's post-warrant rationalizations cannot cure the affidavit's actual false language. *Aguilar v. State of Tex.*, 378 U.S. 108, 109 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention.").

iCloud Account and the Flagstar Account used the same internet connection on the same day. These coincidental hits out of 21,707 instances of iCloud activity across 1,432 IP addresses, Tappeto Aff. ¶ 13, are not indicia of "access," let alone "control."

Finally, SA Cunder's affidavit gave the Court the impression that he could compare the overlap between the IP addresses associated with Frank Carone's iCloud Account and the IP addresses associated with the Flagstar Account throughout 2022. iCloud Aff. ¶ 34. In fact, SA Cunder lacked the foundational records to perform even that analysis, because he did not have *any* Flagstar IP record activity *before* November 9, 2022—a fact he omitted from the iCloud Affidavit. Tappeto Aff. ¶¶ 15, 20. The Opposition does not address this omission.

**b. The Motion Has Made a Substantial Showing of At Least Recklessness**

The Motion established more than enough for at least recklessness to be "inferred." *Kostin*, 2025 WL 1504409, at *19. First, there can be no dispute that exculpatory evidence, including the evidence described *supra*, was readily accessible to SA Cunder. *United States v. Lahey*, 967 F. Supp. 2d 698, 721 (S.D.N.Y. 2013) (finding recklessness where affiant possessed, or had ready access to, exculpatory information). Specifically, he had access to the same iCloud addresses and Flagstar records (or lack thereof) Mr. Tappeto did, and those records made clear the addresses used by Frank Carone's iCloud Account almost never temporally overlapped with those used by the Flagstar Account. It is hard to imagine that when SA Cunder boasted of "885" instances of overlapping addresses, he did not realize there was almost no temporal overlap, i.e., Frank Carone was almost never in the vicinity of the IP addresses using the Flagstar Account during the relevant period. At a minimum, by relying on these records, SA Cunder should have been aware of this information. That he chose to present (or at least may have recklessly presented) the IP addresses in a misleadingly inculpatory manner while withholding this known—and essentially

undisputed—exculpatory evidence supports the inference that the omissions may have been calculated to "mislead." *Lahey*, 967 F. Supp. 2d at 721.

Second, the Government's characterization of SA Cunder's omissions as mere "negligence or an innocent mistake," Opp. 23, "is belied" by his own "experience." *United States v. Kunen*, 323 F. Supp. 2d 390, 397 (E.D.N.Y. 2004) (internal quotations omitted). SA Cunder averred the iCloud Affidavit was based on his experience "le[ading] and support[ing] numerous investigations," including "executing search warrants and reviewing electronic evidence maintained by Internet service providers, such as Apple," as well as his "training and experience concerning the investigation of white-collar crimes." iCloud Aff. ¶ 2. The Government cannot credibly suggest his exclusion of exculpatory evidence—especially evidence that the account central to the alleged crime had no IP records for *nearly all of 2022*—was an innocent oversight.

Third, and as discussed further below, the omitted exculpatory evidence was "clearly critical" to the determination of probable cause. *Lahey*, 967 F. Supp. 2d at 721. Absent the false statements, the iCloud Affidavit lacks the requisite "nexus" between the crime and iCloud Account. *See Banyan*, 791 F. Supp. 3d at 393-94.

The Government attempts to sidestep this evidence by pointing to a straw man. Although it does not dispute Mr. Tappeto's analysis showing the Flagstar IP data indicates substantial overlap with *Anthony Carone's* iCloud Account rather than with Frank Carone's iCloud Account, the Government asserts this omission cannot support a finding of intent because Anthony Carone's iCloud records did not come into the Government's possession until after the iCloud warrant. Opp. 20. But that is unavailing. As outlined *supra*, it does not matter if SA Cunder knew Anthony Carone *specifically* was accessing the Flagstar Account during the "relevant" period: what matters is that SA Cunder had before him ample evidence undermining the inference that Frank Carone,

via his iCloud Account, was "control[ling]" the Flagstar Account during the relevant period.[3] *See also* Mot. 10-15. And in any event, even in the absence of Anthony Carone's iCloud records, SA Cunder knew or should have known the Flagstar Account was being accessed via IP addresses principally associated with Abrams Fensterman, where Anthony Carone—and not Frank Carone—worked at that time. Despite having this evidence, SA Cunder elected to omit it, and each of these omissions "dr[ove] in the same direction" towards establishing a flawed connection between Frank Carone's iCloud Account and the Flagstar Account. *Lahey*, 967 F. Supp. 2d at 723.

**c. The Omitted and Misrepresented Evidence Is Material**

The issues identified here are not, as the Government claims, merely "technical, minute analys[es]." Opp. 24. Instead, they undermine the central premise of the iCloud Affidavit's argument that there was probable cause that evidence of criminality would be found on Frank Carone's iCloud. The affidavit builds its case for searching the iCloud Account specifically around the assertion that the iCloud Account would contain evidence that Frank Carone, and not his brother, controlled the Flagstar Account in order to pay his personal credit card bills. iCloud Aff. ¶ 28. It relies on the IP address overlap as proof of this control, and then uses that premise to support its assertion that the iCloud Account would contain "bank statements and communications" and other documents associated with these payments and "with the alleged Target Offenses." *Id.* ¶¶ 37-39. Without the premise of control, SA Cunder offers no reason to believe those records would be found in Frank Carone's iCloud Account.

The Government attempts to minimize the materiality of the misinformation presented to the magistrate about the Flagstar Account by claiming the affidavit "set forth several types of

[3] Indeed, the Government's later filings tell a different story. The Indictment alleges the account was one "which A. CARONE controlled," Ind. ¶ 6, and SA Cunder himself later swore "A. CARONE directed F. CARONE's personal assistant to transfer the funds" out of it. Phone Aff. ¶ 16.

[additional] evidence that were expected to be found" on the account, such as texts, emails, and calendar invitations that "may" reflect evidence of the alleged crime. Opp. 18. But broad descriptions of *what* evidence "may" be in the iCloud Account are irrelevant if there is no specific articulation of probable cause to believe *why* evidence of the crime would be there. Nor does the fact the account was linked to the phone number Frank Carone used to call Zhu, *see id.*, establish a nexus: the affidavit relied on call toll records, iCloud Aff. ¶ 20, but identified no basis Zhu or Frank Carone texted or had any written evidence regarding the alleged crime that would actually exist in the iCloud Account. What is more, without being able to establish Frank Carone controlled the Flagstar Account, the iCloud Affidavit provides no reason to believe Frank Carone *knew* Zhu had paid Anthony Carone at all. Further, SA Cunder did not identify any actions Frank Carone took regarding Zhu's shelter contract. Without evidence as to knowledge of alleged bribe payments or participation in an official act, the affidavit's mere reference to calls between Frank Carone and Zhu does not establish probable cause as to either criminality or relevant evidence on the Account. In short, when the iCloud Affidavit is stripped of its misleading representations and omissions, what remains are conclusory assertions that do not rise to probable cause. *United States v. Groezinger*, 625 F. Supp. 2d 145, 152 (S.D.N.Y. 2009).

## II. The Government Lacked Sufficient Probable Cause That Frank Carone's Phone Contained Relevant Evidence

The Phone Affidavit's only explanation for why Frank Carone's phone would contain evidence of the alleged scheme is SA Cunder's claim that incriminating messages with Zhu were "likely deleted" from the iCloud Account but could be "recovered from [Frank Carone's] physical device." Phone Aff. ¶¶ 26-27. That theory derives from the iCloud search and falls with it. *Id.* ¶¶ 7, 26; *see United States v. Soviero*, 357 F. Supp. 1059, 1062 (S.D.N.Y. 1972). It also rests on

misstatements and omissions SA Cunder made knowingly or recklessly, including the statement that "none" of the incriminating messages from Zhu were on Frank Carone's iCloud Account.

#### a. The Phone Affidavit's Deletion Theory Was Knowingly or Recklessly False and Misleading

Each pillar of the deletion theory was false or misleading. First, SA Cunder swore "none" of the incriminating messages with Zhu was on the iCloud Account. Phone Aff. ¶ 26. But this statement is directly contradicted by paragraph 45 of the Indictment, which contains an allegedly incriminating message involving Zhu that is available on the iCloud Account. Tappeto Aff. ¶ 31. Although the Government now claims this text is "not the incriminating part," Opp. 28, SA Cunder referenced that text as evidence of the alleged scheme. Phone Aff. ¶ 26 (citing Ind. ¶¶ 45-46).

Second, SA Cunder represented messages "immediately before and after" the texts remained on the account, implying a surgical removal of damning texts. Phone Aff. ¶ 26. But in fact, the December 25, 2023 exchange is missing as a "complete, undifferentiated block," belying any sinister implications. Tappeto Aff. ¶¶ 29-30, 32-33. Indeed, as the Government acknowledges, numerous innocuous text blocks in this period were missing. Opp. 29-30. The Government's complaint that it need not catalogue every message or negate all innocuous explanations misses the point. *Id.* SA Cunder *affirmatively* characterized the record as showing selective deletion while withholding facts refuting that characterization. An affiant "may not omit circumstances that are critical to the evaluation of probable cause." *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir. 1994).

Third, SA Cunder falsely represented a message can be deleted "from" iCloud and yet survive on the phone used to delete it. Phone Aff. ¶¶ 26-27; Tappeto Aff. ¶¶ 35-36. The Government argues that this representation was not false because, as the defense acknowledged in its Motion, deleted cellphone messages can theoretically be preserved on a second, older device that was not connected to the internet at the time of deletion. Opp. 27. But this new two-phone

theory cannot rehabilitate the Phone Affidavit. SA Cunder never gave this theory in his affidavit, nor does the affidavit mention any second, older device, let alone that such a device still even existed. *See* Phone Aff. ¶¶ 26-27; *Aguilar*, 378 U.S. at 109. In addition, the Government's post-hoc rationalization contradicts SA Cunder's earlier sworn statement in the iCloud Affidavit that the account was "continuously registered to one Apple device." iCloud Aff. ¶ 36. In short, each of the arguments supporting SA Cunder's purported deletion theory is directly undermined by the records that were before him, supporting a clear inference of at least recklessness.

Fourth, and critically, SA Cunder also omitted that the iCloud Account contains no substantive messages whatsoever, whether with Zhu *or anyone* else, before November 13, 2023—in other words, nearly the entire period of the alleged conspiracy. This strongly suggests messages were not syncing to iCloud at all, and their absence is therefore "inconsistent with manual deletions." Tappeto Aff. ¶¶ 24-27. There would have been no reason to obscure this fact from the issuing magistrate other than to minimize the significance of the supposedly missing messages.

Moreover, SA Cunder's recklessness may be inferred. The Government possessed the iCloud records for eighteen months before the Phone Affidavit, Mot. 7, and these omitted facts are apparent in those records. Tappeto Aff. ¶ 24. SA Cunder vouched for his deletion theory based on his "training and experience," and this alleged deletion is at the heart of his argument for why the phone is relevant. Phone Aff. ¶ 27; *see Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) (recklessness inferred where omitted information was "clearly critical").

**b. The Omitted and Misrepresented Information Was Material**

When corrected for these errors regarding deletion, the Phone Affidavit does not establish probable cause. Like its arguments regarding the iCloud Affidavit, the Government conflates probable cause a crime was committed with the separate question of whether that crime has a nexus

to the place to be searched. *See Banyan*, 791 F. Supp. 3d at 393-94. That Frank Carone used a phone in 2022 and 2023, Opp. 25, does not show it *specifically* held incriminating materials. *See id*. SA Cunder made the recovery of deleted messages the basis for searching the phone, and without that basis, nothing connects the phone specifically to the alleged wrongful conduct.

The Government's reliance on the promissory note allegations does not change the analysis. Opp. 25. Those allegations still create no nexus between the alleged wrongdoing and the phone specifically. *See Banyan*, 791 F. Supp. 3d at 394-95. At a minimum, Frank Carone has made the "substantial preliminary showing" required for a *Franks* hearing on both warrants. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Indeed, the Government's offer to supplement the record further, Opp. 20 n.7, only confirms that the facts should be developed through testimony. *See United States v. Lauria*, 70 F.4th 106, 131-32 (2d Cir. 2023).

**CONCLUSION**

For the foregoing reasons, the Court should grant Frank Carone's motion for a *Franks* hearing as to the iCloud Warrant and the Phone Warrant.

Dated: New York, New York
November 17, 2026

Respectfully submitted,

**COOLEY LLP**

By: */s/Andrew D. Goldstein*
Andrew D. Goldstein

Russell Capone
55 Hudson Yards
New York, New York 10001
Phone: (212) 479-6000
Email: agoldstein@cooley.com
rcapone@cooley.com

**AGNIFILO INTRATER LLP**

Marc A. Agnifilo
Jacob Kaplan
Karen Friedman Agnifilo
Zach Intrater
140 Broadway, Suite 4530
New York, New York 10005
Phone: (646) 205-4350
Email: marc@agilawgroup.com
jacob@agilawgroup.com
karen@agilawgroup.com
zach@agilawgroup.com

**AIDALA, BERTUNA & KAMINS, P.C.**

Arthur L. Aidala
546 Fifth Avenue
New York, New York 10036
Phone: (212) 486-0011
Email: aidalaesq@aidalalaw.com

*Attorneys for Defendant Frank V. Carone*